**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **LAMAUR PRICE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-24-394-GLJ** |
| | ) | |
| **ADAM R. TELLE,[1] Acting Secretary** | ) | |
| **of the Department of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# ORDER

This case arises out of Plaintiff Lamaur Price's employment at the McAlester Army Ammunition Plant ("Plant") in McAlester, Oklahoma. Plaintiff sues the United States, through Adam R. Telle, Acting Secretary of the U.S. Department of the Army, alleging unlawful reprisal for engaging in a protected activity, as well as race discrimination in violation of Title VII. Defendant now seeks exclude certain potential testimony of particular witnesses as well as certain damage testimony by Plaintiff. As set forth below, the Court finds that Defendant's Motion in Limine and Brief in Support [Docket No. 45] is GRANTED IN PART and DENIED IN PART.

[1] On September 3, 2026, Adam R. Telle was appointed Acting Secretary of the Department of the U.S. Army. In accordance with Fed. R. Civ. P. 25(d), Mr. Telle is substituted for Daniel P. Driscoll as Defendant in this action.

## ANALYSIS

### I. Applicable Law

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c); cf. Fed. R. Civ. P. 12(e)). As such, "[t]he purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F.Supp.2d 1201, 1208 (D. Kan. 2008), *aff'd*, 402 F. App'x 337 (10th Cir. 2010) (internal quotations omitted); *see also Dry Clean Super Ctr., Inc. v. Kwik Indus., Inc.*, 2012 WL 503510 *4 (D. Colo. Feb. 15, 2012) ("The purpose of a motion in limine is to allow the Court to decide evidentiary issues in advance of trial to avoid delay and ensure an evenhanded and expeditious trial."). Motions in limine "are designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Graves v. Dist. of Columbia*, 850 F.Supp.2d 6, 10 (D.D.C. 2011) (quotation marks omitted).

To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). However, "the district court may change its ruling at any time for

whatever reason it deems appropriate." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995) (citations omitted); *see also Luce*, 469 U.S. at 41 ("The ruling is subject to change when the case unfolds . . . [E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling."). Alternatively, a judge may decline to rule on an issue raised via limine motion, preferring to "await developments at trial before [so] ruling" to allow the "decision [to] be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole." *Graves*, 850 F. Supp. 2d at 11 (quotation marks and citations omitted).

Relevant evidence is admissible, while irrelevant evidence is inadmissible. Fed. R. Evid. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "The fact to be proved may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action." Fed. R. Evid. 401 advisory committee's note to 1971 proposed rule. Relevance is "determined in the context of the facts and arguments in a particular case, and thus [is] generally not amenable to broad per se rules." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008).

## II. Motion in Limine

### A. Plaintiff's Witnesses

#### *1. Dana Papalia*

Defendant seeks to exclude Dana Papalia's testimony, Plaintiff's current supervisor, consisting of subjective complaints and legal conclusions, hearsay statements she heard at the beauty salon and her subjective belief regarding Plaintiff's treatment or Defendant's motivations pursuant to Fed. R. Evid. 402, 403, 701 and 802. Docket No. 45, p. 3. Specifically, Defendant references statements in various paragraphs of Ms. Papalia's Witness Statement attached to Defendant's Motion for Summary Judgement and Brief in Support. Docket No. 43, Ex. 22 at ¶¶ 4, 6, 7, & 8. In response, Plaintiff argues generally that Ms. Papalia's testimony involves relevant evidence of racial animus and that such evidence is not outweighed by undue prejudice under Fed. R. Evid. 403. Docket No. 46, pp. 3-5.

In paragraphs 4, 7 and 8 of her statement, Ms. Papalia states that, *inter alia*: it is her "belief" that Plaintiff was intentionally overlooked for potential promotions and selecting officials consistently hired and promoted only Caucasian employees over Plaintiff; "I do believe" Ammunition Operations management officials retaliated against Plaintiff for his previous complaint; and Plaintiff was discriminated and retaliated against because of his race and that the management team had the desire to only promote Caucasian employees into leadership positions. Docket No. 46, Ex. A at ¶¶ 4, 7 & 8.

In general, lay witnesses may testify to facts and opinions of which they have personal knowledge, including particularized knowledge based on their respective

professional experience and background. Fed. R. Evid. 701; Fed. R. Evid. 701 advisory committee's note to 2000 amendments. Specifically, under Fed. R. Civ. P. 701 "testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception"; "(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue"; and "(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Moreover, "[c]ourts generally hold admissible under Rule 701 evidence in the form of lay opinion testimony in discrimination cases when given by a person whose position with the defendant entity provides the opportunity to personally observe and experience the defendant's policies and practices." *Gossett v. Oklahoma ex rel. Bd. of Regents for Langston University*, 245 F.3d 1172, 1179 (10th Cir. 2001) (citing *Hansard v. Pepsi–Cola Metro. Bottling Co.*, 865 F.2d 1461, 1466–67 (5th Cir. 1989) ("Courts often have permitted lay witnesses to express opinions about the motivation or intent of a particular person if the witness has an adequate opportunity to observe the underlying circumstances.") (citing cases); *cf. United States v. Hoffner*, 777 F.2d 1423, 1425 (10th Cir.1985) ("[C]ourts have been very liberal in admitting witnesses' testimony as to another's state of mind if the witness has had a sufficient opportunity to observe the accused so as to draw a rational conclusion about the intent of the accused."); *United States v. Freeman*, 514 F.2d 1184, 1191 (10th Cir. 1975) (lay opinion testimony of employee admitted as "a shorthand rendition of his knowledge of the total situation and the collective facts")).

Defendant generally appears to be seeking to exclude Ms. Papalia's testimony regarding her belief that Plaintiff was "intentionally" overlooked for promotions in favor of lesser qualified candidates and that Plaintiff was retaliated against for his previous complaint as ultimate issues or legal conclusions. Rule 704 of the Federal Rules of Evidence, however, provides that [a]n opinion is not objectionable just because it embraces an ultimate issue." Indeed, Rule 704 reflects that the ultimate-issue rule has been abolished. *See United States v. Smith*, 156 F.3d 1046, 1054 (10th Cir. 1998). Nonetheless, there are some other limitations regarding testimony on ultimate issues. Specifically, the Tenth Circuit has stated that "an expert may not state legal conclusions drawn by applying the law to the facts." *A.E. by and Through Evans v. Indep. Sch. Dist. No. 25, of Adair Cty.*, 936 F.2d 472, 476 (10th Cir. 1991). "[Rules 701, 702, and 403] afford ample assurances against the admission of opinions [under rule 704] which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day." *United States v. Barile*, 286 F.3d 749, 759-60 (4th Cir. 2002). Pursuant to Rule 704, it is the Court's task "to distinguish [helpful] opinion testimony that embraces an ultimate fact from [unhelpful] opinion testimony that states a legal conclusion." *United States v. Perkins*, 470 F.3d 150, 158 (4th Cir. 2006) (internal quotation marks omitted) (quoting *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002)).

From Ms. Papalia's statement, it is impossible for the Court to determine the full scope of her potential testimony. It appears she likely has some personal knowledge of Plaintiff's skills and treatment by Defendant. What is not clear, however, is the full

contours of her personal knowledge, including, for example, whether she knows the actual experience or skill levels of those she believes received promotions instead of Plaintiff. Similarly, it is unclear as to whether Ms. Papalia's statements that Plaintiff was "intentionally" overlooked, that Plaintiff was "retaliated against" or "endured these discriminative actions" because of his race are sufficiently based on her personal knowledge or observations. Furthermore, these statements have the potential of being legal conclusions rather than statements on an ultimate issue without some factual backing.

However, because the Court cannot say that these statements are inadmissible on any grounds, the "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners*, 831 F.Supp. at 1400. 1993). Nonetheless, Plaintiff is cautioned that a fulsome foundation must be laid demonstrating Ms. Papalia's personal knowledge for any lay opinions she offers and that conclusions such as that Plaintiff was "intentionally overlooked", was "retaliated against" for filing his previous claim, endured "discriminative actions and retaliated against simply because of his race", or there was a "hostile working environment" are inadmissible as stating legal conclusions and/or will be excluded because their probative value is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403.[2]

[2] Federal Rule of Evidence 403 permits the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *United States v. Cox*, 684 F. Appx. 706, 708 (10th Cir. 2017). "Rule 403 sets a high bar for reversing a district court's decision to admit relevant evidence.

Lastly, Ms. Papalia's statement also includes a description of a conversation she had with her beautician regarding a Plant employee. Docket No. 46, Ex. A at ¶ 6. This statement contains at least three levels of hearsay for which there is no exception. *See* Fed. R. Evid. 803.[3] Thus, any testimony by Ms. Papalia concerning the conversation with her beautician is inadmissible under Fed. R. Evid. 802 and the Motion is granted as to that testimony.

### *2. Billexi Carter*

Defendant seeks to exclude Billexi Carter's testimony, one of Plaintiff's co-workers, consisting of her "belief" or opinion that Plaintiff was denied equal opportunities at the Plant and that Plaintiff was discriminated and retaliated against because of his race. Docket No. 45, p. 5. Defendant refers generally to Ms. Carter's written statement and specifically to paragraph 22, but does not otherwise identify any specific testimony it seeks to exclude. *Id.* Plaintiff, while not identifying any specific paragraph of her statement,

---

We have previously stated, 'our law favors admission of all relevant evidence not otherwise proscribed.'" *United States v. Watson*, 766 F.3d 1219, 1241 (10th Cir. 2014) (quoting *United States v. Irving*, 665 F.3d 1184, 1213 (10th Cir. 2011)). Excluding evidence under Rule 403 is therefore "an extraordinary remedy [that] should be used sparingly." *Watson*, 766 F.3d at 1241 (quoting *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999)). In deciding whether to exercise this extraordinary power, the Court must give the evidence its maximum reasonable probative force and the minimum reasonable risk of unfair prejudice or confusion. *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir.2000).

[3] Under the Federal Rules of Evidence, hearsay is a statement that the declarant does not make while testifying at the current trial or hearing; and which a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Hearsay is inadmissible unless federal statute or the Federal Rules of Evidence provide otherwise. Fed. R. Evid. 802. Finally, "hearsay within hearsay" is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule. Fed. R. Evid. 805.

argues that Ms. Carter can testify as to specific instances and events she witnessed, and her opinions drawn from those observed events. Docket No. 46, pp. 5-6.

Ms. Carter's statement contains numerous instances in which she states she "witnessed" certain conduct or events and offers her opinions based on those observed events. Docket No. 45, Ex. B. It is not always clear, however, what level of personal knowledge Ms. Carter has for her statements. For example, Ms. Carter states she "witnessed" Plaintiff receive unequal treatment by Amber Dominguez, Holly Price and Jeff Dugan, but does not expressly state the period, specific temporary promotions or the factual basis for her conclusion Plaintiff was treated unequally. *Id.* at ¶ 3. Similarly, Ms. Carter states she "witnessed [Plaintiff] falsely accused of sexual assault by a coworker", but the basis of her belief that the accusation was false is unclear. *Id.*, at ¶ 5. In other instances, Ms. Carter offers her opinion without a clear personal knowledge basis, such as that the Ammunition Operations "planned to keep Lacy Toby's promotion hid from" Plaintiff, that Ms. Dominguiz "had malicious motives to prevent" Plaintiff from promotion, and that the false sexual assault allegation against Plaintiff "was a concealed strategy" that management used to prevent Plaintiff from fair and equal opportunity for promotion. *Id.*, at ¶¶ 9-11.

As noted above, Ms. Carter may testify to facts and opinions of which she has personal knowledge, including particularized knowledge based on her respective professional experience and background. *See* Fed. R. Evid. 701. Similarly, Ms. Carter may offer lay opinion testimony resulting from her position with Defendant to the extent it

provided her the opportunity to personally observe and experience Defendant's relevant policies and practices, including her opinions about the motivation or intent of a particular person if she had an adequate opportunity to observe the underlying circumstances. *Gossett*, 245 F.3d at 1179. It is unclear from Ms. Carter's statement, however, whether she meets those requirements and, thus, it is unclear whether Ms. Carters testimony is inadmissible on any grounds. *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d at 846. Therefore, the Motion is denied to the extent Ms. Carter can testify as to specific incidents and events based on her personal knowledge and her reasonable opinions based on those events or occurrences. Nonetheless, Ms. Carter's testimony as to the motives or intent of Defendant generally or individual employees specifically that is not supported by observation or personal experience is excluded.

***3. Rebecca Grounds***

Defendant seeks to exclude Rebecca Grounds' testimony, one of Plaintiff's former co-workers, consisting of her belief that Plaintiff received discriminatory and retaliatory treatment from Plant management officials due to his race. Docket No. 45, p. 5 (citing Docket No. 43, Ex. 20 at ¶ 14). Specifically, Defendant objects to Ms. Grounds' testimony because she did not work with Plaintiff during the relevant period of his claims and she was not a deciding or managing official with decision-making authority over Plaintiff. *Id*. Plaintiff responds that Ms. Grounds offers first-hand testimony of management actions against him based on his race and in retaliation for a prior complaint. Docket No. 46, p. 6.

Although Plaintiff identifies Ms. Grounds' testimony regarding being instructed to allow Lacey Toby to view her resume to update her resume and was asked to file a false sexual harassment allegation against Plaintiff, as well as other events she "witnessed," no dates for these witnessed events is provided. *Id.*, Ex. C at ¶¶ 6-7. Indeed, given that Ms. Grounds ceased being a Plant co-worker of Plaintiff's in 2019, it is unclear how she personally witnessed any events relevant to discrimination against or retaliation of Plaintiff in 2023.[4] Without more detail of how and when Ms. Grounds witnessed any relevant events related to the claims in this case, the Court cannot fully evaluate the admissibility of any of her alleged statements. Thus, the Court cannot say that these statements are inadmissible on any grounds and the "evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners*, 831 F.Supp. at 1400. 1993). Again, however, Plaintiff is cautioned that a fulsome foundation must be established demonstrating Ms. Grounds' personal knowledge for any observations, when such personal knowledge was obtained and that any lay opinions she offers are not purely inadmissible legal conclusions or speculation.

[4] The failure to identify the dates on which Ms. Grounds alleges she witnessed various events is particularly problematic given the Plaintiff's separate case for sex discrimination during an earlier period at the Plant, which was dismissed October 28, 2026. *See Lamaur Price v. Adam R. Telle, Acting Secretary of the Department of the Army*, Case No. 21-cv-00100-GLJ, United States District Court for the Eastern District of Oklahoma.

**4. Karen Knox**

Defendant seeks to exclude Karen Knox's testimony because it relates only to her allegation that she experienced racial discrimination at the Plant and does not state whether she was similarly situated to or had the same supervisor as Plaintiff. Docket No. 45, p. 6. Defendant further argues Ms. Knox's testimony is irrelevant to Plaintiff's claims, is based on hearsay and any probative value is substantially outweighed by the danger of confusing the issues. *Id.*, pp 6-7. Plaintiff responds that Ms. Knox's testimony parallel's Plaintiff's in that she suffered discrimination and retaliation "from management officials and production supervisors" after making her complaint to the EEOC. Docket No. 46, p. 8.

"As a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent." *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990). Such evidence also may be relevant to proving a pattern of conduct, which in turn may bear on the issue of pretext. *See Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 561 (10th Cir. 1996) (citing *Bingman v. Natkin & Co.*, 937 F.2d 553, 556–57 (10th Cir. 1991)). Nonetheless, "anecdotal evidence of discrimination should only be admitted if 'the prior incidences of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand.'" *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 856 (10th Cir. 2000) (quoting *Simms v. Oklahoma*, 165 F.3d 1321, 1330 (10th Cir. 1999)).

While Ms. Knox alleges she experienced racial discrimination, it was in the form of racial slurs directed at her by a co-worker. Docket No. 46, Ex. 4 at ¶ 2. Moreover, although

she states management officials and production supervisors retaliated against her, including by firing her, she does not identify the supervisors or the period when these events occurred. *Id.*, ¶¶ 3-7. Thus, it is impossible to assess the potential relevance of Ms. Knox's testimony or whether her experience can be tied to Plaintiff's allegations, although it appears unlikely a sufficient foundation or connection can be established. Nonetheless, the Court cannot say that these statements are inadmissible on any grounds at this point and any decision on the admissibility of Ms. Knox's testimony is deferred until trial.

**5. Chrystal Barlow**

Defendant seeks to exclude Chrystal Barlow's testimony regarding her belief that Ms. Dominguez was "hateful" and "should not be a manager" as well as that Plaintiff was subject to a hostile work environment. Docket No. 45, p. 7. Plaintiff responds that Ms. Barlow was Plaintiff's co-worker in the AO Directorate and has personal knowledge that Ms. Dominguez is "hateful" and that Ms. Dominguez's clique of Stormy Travis, John Ross and Lacey Toby received special treatment and promotions. Docket No. 46, Ex. E at ¶¶ 21 & 25. Ms. Barlow further states that she believes Plaintiff was harassed due to his "age, race and/or sex" because he "should have" received one of the temporary promotions and they instead when to "young, pretty women or the husbands of the young, pretty women" who were all white or possibly native American. *Id.*, ¶¶ 16, 44-45.

First, any testimony by Ms. Barlow that Ms. Dominguez is "hateful" or a poor manager is irrelevant and inadmissible as to Plaintiff's claims. While a "hateful" demeanor could potentially provide context for the retaliation claim, Ms. Barlow does not make that

connection or provide sufficient context to make that connection. Second, it is unclear whether Ms. Barlow believes Plaintiff was discriminated against because of his race or his age, as she does not distinguish between the two and her answer in paragraph 45 focuses on the ages of those she believed received preferential treatment and age discrimination is not at issue in this case. *Id.*, ¶ 45. Third, Ms. Barlow affirmative states that she did not witness any other member of management harass Plaintiff or witness Todd Stone, John Ross or Ms. Dominguez treat Plaintiff differently than other employees because of his race. *Id.*, ¶¶ 40-43. Finally, Ms. Barlow offers no foundation for her belief that Plaintiff should have received one of the temporary promotions other than he was one of two people who had worked in the department since it developed. *Id.*, ¶¶ 24 & 44. Therefore, the Motion is granted as to Ms. Barlow to the extent she cannot provide any further foundation or basis for her opinions.

**6. Joseph Budds**

Defendant seeks to exclude Joseph Budds's testimony that Plaintiff was passed over for promotions because of his race and that there was favoritism and personal relationships with leadership. Docket No. 45, p. 7. Plaintiff responds that Mr. Budds observed the creation of temporary positions and who filled them, as well as secretaries coming in as GS-5s and then being quickly promoted into GS-12 positions. Docket No. 45, pp. 9-10.

A review of Mr. Budds' statement reveals very little personal knowledge or personal observations relevant to Plaintiff's claims. For example, Mr. Budds does not work in the same group as Plaintiff and has no knowledge about Plaintiff's working relationship with

or any harassment by Mr. Ross, Mr. Stone, Ms. Dominguez, or any other member of management. *Id*., Ex. F at ¶¶ 15-17, 25-28. Mr. Budds says there is a pattern of people becoming GS-12s that pass over employees like Plaintiff but also admits he does not know the qualifications of those who were promoted. *Id*., ¶¶ 18, 21 & 29. At most, Mr. Budds observed that there are zero black or Hispanic supervisors at the Plant. *Id*., ¶ 21. Moreover, the remainder of Mr. Budds' knowledge appears to derive from his conversations with Plaintiff. As such, it does not appear that he has any personal knowledge that is relevant to Plaintiff's claims. Therefore, the Motion is granted as to Mr. Budds.

**7. Henry Lance Reading**

Defendant seeks to exclude Henry Lance Reading's testimony regarding Plaintiff's discrimination, Plaintiff's qualifications compared to Lacy Toby and that other people were passed over for promotions in favor of less qualified employees. Docket No. 45, P. 7. Plaintiff responds by quoting Mr. Reading's statement regarding Ms. Toby filling a temporary position even though she was from outside the team, his belief that Plaintiff could do the job but that serving in the temporary position created an advantage for Ms. Toby when the permanent position opened. Docket No. 46, pp. 10-11.

Based on Mr. Reading's statement, it does not appear that he has personal knowledge relevant to Plaintiff's claims. For example, much of Mr. Reading's statement is inadmissible hearsay based on conversations he had with Plaintiff, such that he states, "Complainant told me", "he told me he felt slighted", "I talked to Complainant", and "He and I talked about this[.]" *Id*. Ex. G, at ¶¶ 17, 19-20. Moreover, although Mr. Reading

described others getting promoted over Plaintiff, he admits he did not work with them and does not know their qualifications or if Plaintiff's resume was strong enough. *Id.*, ¶¶ 19-20. Mr. Reading also did not observe any harassment of Plaintiff by Mr. Ross, Mr. Stone, Ms. Dominguez, or any other manager. *Id.*, ¶¶ 29-33. Indeed, Mr. Reading stated, "I don't necessarily have a reason to think he didn't get the job due to his age, race, or sex, but he really was more qualified than Lacy Toby for that job." *Id.*, ¶ 20. Nothing in his statement, however, indicates sufficient personal knowledge to reach this conclusion other than statements from Plaintiff or speculation. Additionally, even giving this testimony its maximum possible probative force and the minimum reasonable risk of unfair prejudice, the probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, and misleading the jury under Fed. R. Evid. 403. Therefore, the Motion is granted as to Mr. Reading.

**B. Plaintiff's Damages**

Defendant seeks to exclude testimony or evidence regarding Plaintiff's damages. Specifically, Defendant argues that because Plaintiff did not disclose a damage expert witness, he should not be permitted to present any evidence consisting of any projected pension losses, social security losses, retirement plan losses and anticipated salary loss based on opinion evidence of Plaintiff. Docket No. 45, pp. 8-9. Defendant also points to Plaintiff's deposition testimony in which Plaintiff did not know the extent of his damage and that he failed to comply with his Fed. R. Civ. P. 26 initial disclosure obligations. *Id.*, p. 12. Plaintiff responds that he should be allowed to testify as to his lost front pay and

back pay as well as emotional distress damages, particularly given that the salary information is within Defendant's exclusive control. Docket No. 46, pp. 14-15.

Federal Rule of Evidence 701 "expressly prohibits the admission of testimony as lay witness opinion if it is based on 'specialized knowledge.'" *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004) (citing Fed. R. Evid. 701); *see also James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) (Rule 701 "does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." (quoting *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 846 (10th Cir. 1979)). In his response, Plaintiff refers to only two types of damages about which he seeks to testify: economic damage consisting of front and back pay; and emotional distress damage.

*1. Back Pay*

It is possible that Plaintiff can offer lay testimony as to his lost back pay. The appropriate standard for measuring a back pay award under Title VII is "to take the difference between the actual wages earned and the wages the individual would have earned in the position that, but for discrimination, the individual would have attained." *Gunby v. Pennsylvania Elec. Co.*, 840 F.2d 1108, 1119–20 (3d Cir. 1988). A lay witness need not always be a trained accountant or economist to calculate economic losses. *See Malloy v. Monahan*, 73 F.3d 1012, 1016 (10th Cir. 1996) (holding that an individual involved with purchasing and restoring houses could calculate his economic losses).

Plaintiff presumably knows what his salary was during the back pay period and the salary for the position he sought is likely known or readily knowable. Thus, to the extent Plaintiff seeks to offer his lay testimony on this simple calculation, such testimony is admissible. If Plaintiff seeks to offer more complex calculations, however, such as the inclusion of sick pay, vacation pay, pension contributions, or other benefits, then such testimony would involve expertise and specialized knowledge that Plaintiff has not shown he possesses. Therefore, the Motion is denied as it relates to Plaintiff's testimony regarding his back pay to the extent he does not attempt to testify regarding anything other than a simple back pay calculation.

2. *Front Pay*

Calculating front pay is a much more complex calculation. A prediction of how the denial of the promotion will affect Plaintiff's future earnings requires the specialized knowledge of an expert. First, an expert is necessary to consider various future contingencies, such as life expectancy, retirement or changes in salary, and how these events will impact Plaintiff's prospective wages. *Cf.*, *Goico v. Boeing Co.*, 347 F. Supp. 2d 986, 992 (D. Kan. 2004) ("A determination of front pay requires the district court [or a witness] to predict future events and consider many complicated and interlocking factors, including the possibilities of promotions, demotions, terminations, changes in business circumstances, and death." (citation omitted)). Second, any calculation of front pay must be reduced to present value, which is a more complex mathematical calculation involving choosing and applying a discount rate. *See*, *e.g.*, *Sparkman v. Thompson*, 2010 WL

5094253 *2 (E.D. Ky. Dec. 14, 2010) ("In particular, [the expert] is expected to provide calculations to appropriately discount any awards of front pay to present value."); *cf. James River Ins.*, 658 F.3d at 1215 ("Accurately accounting for the interaction between depreciation and damage requires professional experience and is beyond the scope of lay opinion testimony."). Therefore, any calculation of front pay requires specialized knowledge beyond that of Plaintiff and Defendant's Motion regarding lay testimony concerning front pay is granted.

*3. Emotional Distress*

Lastly, Plaintiff indicates he intends to testify regarding his non-economic emotional distress damages. In general, emotional distress damages are available in a Title VII case, when supported by sufficient evidence. *See Atchley v. Nordam Grp., Inc.*, 180 F.3d 1143, 1149-50 (10th Cir. 1999) (upholding jury award for emotional distress in Title VII pregnancy discrimination case). A plaintiff must demonstrate "genuine injury" in this respect, and a plaintiff's testimony alone may serve as evidence of emotional distress. *Id.* (citing *Price v. City of Charlotte*, 93 F.3d 1241, 1254 (4th Cir. 1996); *Carey v. Piphus*, 435 U.S. 247, 264 & n.20 (1978)). *See also Jensen v. West Jordan City*, 968 F.3d 1187, 1206 (10th Cir. 2020) (noting that "a lay witness is competent to testify concerning those physical injuries and conditions which are susceptible to observation by an ordinary person") (quotation omitted).

Additionally, Rule 26(a) governs initial disclosures and provides that the parties must, among other things, disclose "a computation of any category of damages claimed by

the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). "Rule 26(a)(1) disclosures are designed to accelerate the exchange of basic information, to 'help focus the discovery that is needed, and facilitate preparation for trial or settlement.'" *Hertz v. Luzenac Am., Inc.*, 2006 WL 994431, at *7 (D. Colo. Apr. 13, 2006) (quoting Fed. R. Civ. P. 26(a) adviroy committee's note to 1993 amendments)). "Initial disclosures should provide the parties 'with information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promot[e] settlement.'" *Id.* (quoting *Windom v. FM Indus., Inc.*, 2003 WL 21939033, at *2 (D. Neb. Aug. 12, 2003)). Nonetheless, "[p]laintiffs are generally not required to produce damage computations for 'garden variety emotional distress' damages, i.e., a claim that is devoid of evidence concerning medical treatment or physical manifestation." *Montoya v. Retiree Health Care Authority*, 2019 WL 2718689, at * 5 (D. N.M. June 7, 2019) (quoting *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 267 F.R.D. 257, 282–83 (D. Minn. 2007). However, where a plaintiff intends to ask a jury for a specific dollar amount or range of compensation for such damages, then most courts find that such a computation is required. *See McCrary v. Country Mut. Ins. Co.*, 2014 WL 1871891, at *2 (N.D. Okla. May 9, 2014) ("[I]f Plaintiffs intend to submit evidence as to the severity of their emotional distress, request a specific amount from the jury, or use expert testimony to support their emotional distress claim, they must provide Defendant with a computation of these damages"); *see also Sandoval*, 267 F.R.D. at 282 ("To the extent that plaintiffs do not intend to suggest a specific amount to the jury for emotional distress damages, this Court will not require them to disclose a computation of these damages . . . If plaintiffs do

not provide this information . . . they will not be allowed to suggest a specific amount to the jury for emotional distress damages.”).

Based on the above, Plaintiff may testify regarding his garden variety emotional distress damages without an expert and notwithstanding his failure to disclose any damage calculation in his initial disclosures. Plaintiff cannot, however, testify regarding any extreme emotional distress, physical manifestations of such distress, or suggest a specific amount or a range of emotional distress damages at trial. Therefore, the Motion is denied to the extent that Plaintiff may testify regarding emotional distress consistent with this order.

## CONCLUSION

Accordingly, as set forth herein, Defendant’s Motion in Limine and Brief in Support [Docket No. 45] is GRANTED IN PART and DENIED IN PART. Moreover, the Court

anticipates and expects the parties to be prepared to articulate and argue all specific remaining unresolved evidentiary issues at the pretrial conference in this matter.

DATED this 29th day of October, 2026.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**